# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN H. ROBB, Individually and On Behalf of All Others Similarly Situated, | :    **Case No. 2:14-cv-01287-DSC** |
| Plaintiff, | : |
| v. | : |
| EDUCATION MANAGEMENT CORPORATION, EDWARD H. WEST, RANDALL J. KILLEEN, and MICK J. BEEKHUIZEN, | : |
| Defendants. | : |

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement (the "Stipulation"), dated September 16, 2015, is entered into among Lead Plaintiff Maurice M. Shihadi ("Lead Plaintiff") and Defendants Education Management Corporation ("EDMC" or the "Company"), Edward H. West, Randall J. Killeen, and Mick J. Beekhuizen (collectively, "Defendants"), through their respective counsel of record relating to the above-captioned litigation. This Stipulation is intended to fully, finally and forever resolve, discharge and settle all claims asserted in this Action (as defined below) against Defendants subject to the approval of the United States District Court for the Western District of Pennsylvania (the "Court").

## I.    THE LITIGATION

### A.    Procedural History of the Litigation

EDMC is one of the largest for-profit education companies in the United States, operating 110 locations across 32 states of the United States and Canada. The Consolidated Amended

Class Action Complaint (the "Complaint") alleges that from July 1, 2011 through September 16, 2014, both inclusive (the "Class Period"), EDMC falsely represented that the Company changed its marketing and recruiting practices to comply with newly-enacted U.S. Department of Education regulations. Specifically, the Complaint alleges that EDMC and its senior officers made false and/or misleading statements and/or failed to disclose, *inter alia*, that: (1) EDMC misrepresented the Company's job placement rates; (2) EDMC employed recruiting and enrollment practices that violated federal regulations and standards established by its accrediting bodies; and (3) EDMC was at risk of losing federal funding under Title IV of the Higher Education Act, 20 U.S.C. §§ 1070, *et seq.* ("Title IV"). The Complaint asserted that these charges were supported by confidential witnesses, as well as pending *qui tam* (whistleblower) actions that were filed against the Company (though these were filed prior to the Class Period, and initially focused on practices that pre-dated that time frame).

The Complaint further alleges that investors learned about the Company's compliance deficiencies through a series of partial, corrective disclosures. Lead Plaintiff asserts the following: On June 20, 2013, the Company announced the termination of John M. Mazzoni, the President of The Art Institutes. On this news, the Company's shares fell over 10% or $0.71, to close at $6.22 on June 21, 2013. On the next trading day, June 24, 2013, the Company's shares fell over 12% or $0.75, to close at $5.47. The total drop over two trading days was over 21% or $1.46.

Lead Plaintiff further alleged the following: on January 24, 2014, EDMC announced that the Company had received "inquiries" from twelve states regarding the Company's business practices related to, *inter alia*, "the recruitment of students, graduate placement statistics, graduate certification and licensing results, and student lending activities." On this news, the

Company's shares fell over 10% or $0.97, to close at $8.70 on January 27, 2014. Subsequently, on September 16, 2014, the Company announced that it would delay the filing of its Annual Report on Form 10-K for the period ended June 30, 2014. As a result of this news, shares of EDMC fell $0.12 or almost 10%, to close at $1.10 on September 17, 2014.

This lawsuit was filed on September 19, 2014 seeking recovery for investors in EDMC securities during the Class Period for alleged violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934. By order dated December 19, 2014, the Court appointed Maurice M. Shihadi as Lead Plaintiff and Pomerantz LLP as Lead Counsel. The Complaint was filed on March 3, 2015. On April 9, 2015, at an initial case management conference before the Honorable David Stewart Cercone, the Court directed that the parties proceed with mediation.

On May 18, 2015, Defendants moved to dismiss the Complaint. Specifically, Defendants argued, *inter alia,* that the Complaint failed to plead particularized facts showing that any of EDMC's statements about its national job placement rates, its national enrollment practices, or its regulatory compliance efforts were materially false and misleading; that a number of the challenged statements were too vague and subjective to support a claim of securities fraud as a matter of law; and that, as to others, EDMC in fact disclosed the information that Lead Plaintiff claimed that EDMC misleadingly omitted. Defendants' motion to dismiss also contended that the Complaint had not pleaded particularized facts giving rise to a strong inference that EDMC's senior executives acted with an intent to defraud. In particular, the motion argued that Lead Plaintiff had failed to plead any cognizable motive for Defendants to have committed fraud, and that Lead Plaintiff had failed to plead particularized facts suggesting that any of EDMC's senior executives knew of the alleged activities described by Lead Plaintiff's alleged confidential witnesses. Finally, Defendants' motion also contended that Lead Plaintiff had failed sufficiently

to plead loss causation. For example, the Defendants pointed out that Lead Plaintiff had not alleged that EDMC's stock price declined when some of the alleged corrective disclosures were made; and that some of the corrective disclosures could not have been corrective because they did not reveal what Lead Plaintiff alleged had been misstated or not disclosed.

On June 30, 2015, the parties participated in a full-day mediation session presided over by former federal district judge Layn R. Phillips, which resulted in an agreement to resolve the claims asserted in the Action for payment of $2,500,000 in return for a release of all securities fraud related claims against the Defendants, as further detailed below.

**B.     Lead Plaintiff's Assessment of the Claims and Benefits of Settlement**

Lead Plaintiff believes that the claims asserted in the Action, as reflected in evidence developed to date, have merit and support his claims.  Additionally, Lead Counsel has researched the applicable law and believes that any defenses Defendants raise can be refuted.  Nonetheless, Lead Plaintiff and Lead Counsel recognize the expense and length of continued prosecution of the Action against Defendants through completion of discovery, trial, and any subsequent appeals, particularly given the relatively small size of the most likely recoverable damages, as well as uncertainty regarding the outcome of the *Qui Tam* Actions,  states Attorneys General inquiries, the Company's voluntary delisting of its securities from the NASDAQ, and its recent restructuring of its debt obligations.

Lead Plaintiff and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Class, and is fair, reasonable, adequate, and in the best interests of the Class and represents a reasonable compromise of the claims.

**C.     Defendants' Denials of Wrongdoing**

Defendants have denied and continue to deny, *inter alia*, that they engaged in any wrongdoing, including, without limitations, that their public statements were misleading; that

they failed to disclose any material information from investors; that they acted in any deceitful manner; and that any investment losses sustained by Lead Plaintiff and the Class were caused by Defendants' alleged misconduct.

Nonetheless, taking into account the uncertainty and risks inherent in any litigation, especially in complex cases such as this one, Defendants have concluded that further litigation of the Action would be protracted, burdensome, and expensive, and that it is desirable and beneficial that the claims asserted in the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Stipulation.

## II.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

### A.   Introduction

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiff, the Class (as defined below), and each of them, and Defendants, and each of them, by and through their respective undersigned counsel or attorneys of record that, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Parties from the Settlement set forth herein, the Action and the Released Plaintiff's Claims shall be finally and fully compromised, settled and released, and the Action shall be dismissed with prejudice, as to all Parties and the Class (both as defined below), upon and subject to the terms and conditions of this Stipulation.

### B.   Definitions

As used in this Stipulation, the following terms have the meanings specified below:

1.0   "Action" means *Brian H. Robb, individually and on behalf of all others similarly situated, v. Education Management Corp., et al.*, 14-cv-01287-DSC, and includes all actions consolidated therein.

1.1     "Authorized Claimant" means any member of the Class who is a Claimant (as defined in ¶ 1.4) and whose claim for recovery has been allowed pursuant to the terms of this Stipulation.

1.2     "Bar Date" means  sixty (60) days after the mailing of the Notice, or such other time period ordered by the Court.

1.3     "Business Day" means any day except a Saturday or Sunday or other day on which national banks are authorized by law or executive order to close in the Commonwealth of Pennsylvania.

1.4     "Claimant" means any Class Member (as defined in ¶ 1.7) who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

1.5     "Claims Administrator" means the firm of Epiq Systems, Inc., which shall administer the Settlement.

1.6     "Class" means all persons who purchased or otherwise acquired EDMC securities during the Class Period, July 1, 2011 through September 16, 2014, both dates inclusive. Excluded from the Class are Defendants, all current and former EDMC directors and officers and their families, as well as all private equity funds affiliated with Providence Equity Partners, Goldman Sachs Capital Partners, and Leeds Equity Partners, and any trust, company, entity or affiliate controlled or owned by any of the excluded persons and entities referenced above.

1.7     "Class Member" means any person or entity that falls within the definition of the Class as set forth in ¶ 1.6.

1.8     "Class Period" means the period from July 1, 2011 through September 16, 2014, both dates inclusive.

1.9     "Common Stock" means the common stock of EDMC.

1.10   "Court" means the United States District Court for the Western District of Pennsylvania.

1.11   "Defendants" means EDMC, West, Killeen, and Beekhuizen.

1.12   "Defendants' Counsel" means the law firms of Wachtell, Lipton, Rosen & Katz and Reed Smith LLP.

1.13   "Derivative Actions" mean *Oklahoma Law Enforcement Retirement Sys. v. Nelson, et al.*, No. GD-12-008785, Court of Common Pleas, Allegheny County, Pennsylvania and *Bushansky v. Nelson, et al.*, No. 2:12-cv-01101-TFM, United States District Court for the Western District of Pennsylvania.

1.14   "Effective Date" means the first date by which all of the events and conditions specified in ¶ 8.0 of the Stipulation have been met and have occurred.

1.15   "Escrow Accounts" mean, collectively, the Notice Administration Fund and the Settlement Fund.

1.16   "Escrow Agent" means Huntington National Bank.

1.17   "Exchange Act" means the Securities Exchange Act of 1934, as amended.

1.18   "Final" means (1) the Court has entered a Judgment approving the Settlement in all material respects, including but not limited to, *inter alia,* (a) certifying a Class for settlement purposes only, (b) approving the scope of the Releases, and (c) ordering the Clerk of the Court to enter final judgment in the form set forth in Exhibit E pursuant to Federal Rule 54(b), finding that there is no just reason for delay of enforcement of the order, and (2) the Judgment has been affirmed in all respects on any appeal or review and is no longer subject to further appeal or review.   Provided, however, and notwithstanding any provision to the contrary in this Settlement, "Final" shall not include (and the Settlement is expressly not conditioned upon) the Court's

approval of attorneys' fees and the reimbursement of expenses sought by Lead Counsel, or the approval of payment of a Compensatory Award (as defined below in ¶ 7.5) for the time and expenses expended by Lead Plaintiff, or any appeals solely related thereto; nor resolution of the claims asserted in the Derivative Actions or the *Qui Tam* Actions.

1.19    "Judgment" means the proposed final order and judgment to be entered by the Court approving the Settlement, substantially in the form attached hereto as Exhibit E or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action.

1.20    "Lead Plaintiff" means Lead Plaintiff Maurice M. Shihadi.

1.21    "Lead Counsel" means Pomerantz LLP.

1.22    "MOU" means the Memorandum of Understanding entered into on July 2, 2015 between Lead Counsel and Defendants' Counsel.

1.23    "Notice" means the Notice Of Proposed Settlement Of Class Action, Motion For Attorneys' Fees And Expenses, And Final Approval Hearing, which is to be sent to Class Members substantially in the form attached hereto as Exhibit B.

1.24    "Notice Administration Fund" means an interest bearing escrow account established by the Claims Administrator to receive funds pursuant to ¶ 2.0(b).

1.25    "Order of Preliminary Approval" means the order certifying the Class for settlement purposes only, preliminarily approving the Settlement, and authorizing notice thereof and related matters set forth in the form attached hereto as Exhibit A.

1.26    "Parties" means Lead Plaintiff and Defendants.

1.27    "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association,

government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

1.28   "Plan of Allocation" means a plan or formula for allocating the Net Settlement Fund (as defined below in ¶ 6.2(v)) to Authorized Claimants.  Any Plan of Allocation is not part of this Stipulation and Defendants shall have no responsibility or liability with respect thereto.

1.29   "Proof of Claim" means the Proof of Claim and Release to be submitted by Claimants, substantially in the form attached as Exhibit D.

1.30   "Publication Notice" means the Summary Notice of Pendency and Proposed Settlement of Action and Final Approval Hearing thereon to be published on a national business internet newswire, substantially in the form attached as Exhibit C.

1.31   "*Qui Tam* Actions" means *Washington v. Education Management Corporation*, Case No. 07-0461 (W.D. Pa.); *Sobek v. Education Management Corporation*, Case No. 10-0131 (W.D. Pa.); *Laukaitis v. The Art Institute Online, Inc.*, Case No. 11-0601 (W.D. Pa.); and *Rainwater v. Education Management Corporation*, Case No. 12-cv-01008 (M.D. Tenn.).

1.32   "Released Parties" means the Lead Plaintiff, Defendants Lead Plaintiff's Released Parties and Defendants' Released Parties.

(i)   "Defendants' Released Parties" shall mean each and every past and current Defendant and, whether or not identified in any complaint filed in the Action, each Defendant's respective families, associates, affiliates, and each and all of their past or present directors, officers, employees, partners, member firms or affiliates, principals, agents, predecessors, successors, parents, subsidiaries, divisions, joint ventures, attorneys, accountants, insurers, co-insurers and reinsurers, assigns, spouses, heirs, executors, trustees, general or limited partners or partnerships, limited liability companies, members, personal or legal representatives, estates,

administrators or other individuals or entities in which Defendants have a controlling interest or

which is related to or affiliated with Defendants, associates, related or affiliated entities, or any

members of their immediate families, or any trusts for which any of them are trustees, settlers or

beneficiaries.

(ii)    "Lead Plaintiff's Released Parties" shall mean Lead Plaintiff, and/or his family,

associates, affiliates, and each and all of his respective past or present employees, attorneys,

accountants, insurers, co-insurers and reinsurers, heirs, executors, trustees, general or limited

partners or partnerships, limited liability companies, members, personal or legal representatives,

estates, administrators, predecessors, successors and assigns or other individuals or entities in

which Lead Plaintiff has a controlling interest or which is related to or affiliated with Lead

Plaintiff and any other representatives of any of these Persons or entities whether or not any such

Released Parties were named, served with process or appeared in the Action.

1.33    "Released Defendants' Claims" means all claims, demands, rights, liabilities or

causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual

or representative, of every nature and description whatsoever, whether known or unknown, or

based on federal, state, local, statutory or common law or any other law, rule or regulation,

including the law of any jurisdiction outside the United States, that could have been brought

heretofore or in the future against Lead Plaintiff, Lead Counsel and Lead Plaintiff's Released

Parties, arising out of the instituting, prosecution, settlement or resolution of the Action,

provided however, that Defendants and Defendants' Released Parties shall retain the right to

enforce in the Court the terms of the Stipulation.

1.34    "Released Plaintiff's Claims" means all claims (including "Unknown Claims" as

defined in ¶ 1.40), rights, demands, suits, matters, issues, liabilities, or causes of action, in law or

in equity, accrued or unaccrued, fixed or contingent, direct, individual or representative, of every nature and description whatsoever, under federal, state, local, foreign law, or any other law, rule, or regulation, whether known or unknown, whether class or individual in nature, that were, could have been, or could in the future be asserted against Defendants and Defendants' Released Parties in any court of competent jurisdiction or any other tribunal, in connection with, arising out of, related to, based upon, in whole or in part, directly or indirectly, in any way, the facts, transactions, events, occurrences, acts, disclosures, oral or written statements, representations, filings, publications, disseminations, press releases, presentations, accounting practices or procedures, compensation practices or procedures, omissions or failures to act which were or which could have been alleged or described in the Complaint in the Action, including any claims for breach of fiduciary duty and other related claims, with the exception of any claims that have been asserted by the plaintiffs in the Derivative Actions or the *Qui Tam* Actions, and provided, that Lead Plaintiff and Lead Plaintiff's Released Parties shall retain the right to enforce in the Court the terms of the Stipulation.

1.35    "Settled Claims" means all of the Released Plaintiff's Claims, and/or Released Defendants' Claims.

1.36    "Settlement" means the settlement contemplated by this Stipulation.

1.37    "Settlement Amount" means Two Million Five Hundred Thousand Dollars ($2,500,000).

1.38    "Settlement Fund" means an interest bearing escrow account established by the Escrow Agent to receive the funds payable by ¶ 2.0(a).

1.39    "Supplemental Agreement" means the agreement entered into on September 16, 2015 between Lead Plaintiff and Defendants, as referenced in ¶ 2.10.

1.40   "Unknown Claims" shall collectively mean all claims, demands, rights, liabilities, and causes of action of every nature and description which Lead Plaintiff or any Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Parties, or might have affected his, her or its decision not to object to this Settlement. With respect to any and all Released Plaintiff's Claims, the Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff shall expressly waive, and each of the Class Members shall be deemed to have waived, and by operation of the Judgment shall have waived, the provisions, rights and benefits of California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR.

Lead Plaintiff shall expressly and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable or equivalent to California Civil Code § 1542. Lead Plaintiff and Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Plaintiff's Claims, but Lead Plaintiff shall expressly, fully, finally and forever settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Plaintiff's Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the

future, including, but not limited to, conduct which is negligent, intentional, with or without

malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or

existence of such different or additional facts.   Lead Plaintiff acknowledges, and the Class

Members shall be deemed by operation of the Judgment to have acknowledged, that the

foregoing waiver was separately bargained for and a key element of the Settlement of which this

release is a part.

### C.   The Settlement

#### a.   The Settlement Consideration

2.0    In consideration of the full and final settlement of all claims asserted or which

could have been asserted against Defendants in this Action, Defendants shall cause to be paid to

the Class, the Settlement Amount as follows:

(a)    Within fifteen (15) Business Days after (i) entry of an Order of Preliminary

Approval of the Settlement, and (ii) transmission to Defendants' Counsel of payee information

for the Escrow Agent (including the name, tax identification number, and Form W-9), EDMC

shall cause to be wired or paid by check or draft to the Escrow Agent $2,500,000 (Two Million

Five Hundred Thousand Dollars), to be deposited by the Escrow Agent into the Settlement Fund.

(b)    The Escrow Agent shall cause to be transferred $250,000 (Two Hundred and Fifty

Thousand Dollars) from the Settlement Fund to a Notice Administration Fund.  All notice costs

shall be paid by Lead Plaintiff from such Notice Administration Fund, provided that Lead

Counsel does not spend more than $250,000 (Two Hundred and Fifty Thousand Dollars) in

notice costs before final approval.

#### b.   The Escrow Agent

2.1    The Settlement Funds shall be invested exclusively in instruments or accounts

backed by the full faith and credit of the United States Government or fully insured by the

United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. The Escrow Agent shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. Defendants shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Escrow Agent.

<strong>c.      Return of Funds in Certain Circumstances</strong>

2.2     Lead Plaintiff agrees that, prior to the Effective Date, the sum of $250,000 (Two Hundred and Fifty Thousand Dollars) deposited into the Notice Administration Fund shall be used solely to fund reasonable out-of-pocket costs and expenses relating to the printing, mailing and publication of notices to Class Members as described in ¶ 2.7, below. In the event that this Settlement Agreement is terminated prior to the occurrence of the Effective Date, the Escrow Agent shall transfer the remaining balance of the Notice Administration Fund and the Settlement Fund, plus accrued interest to EDMC.

Payment of all Notice related costs is Lead Plaintiff's sole responsibility and shall be paid out of the Notice Administration Fund as provided in ¶ 2.0. In no event shall Defendants be liable to Lead Plaintiff, Lead Counsel, the Class, or any other Person, for any sums used to fund such out-of-pocket costs and expenses.

<strong>d.      Handling and Disbursement of Funds by the Escrow Agent</strong>

2.3     No monies will be disbursed from the Settlement Fund until after the Effective Date except:

(a)     As provided in ¶ 2.8, as regards taxes, and ¶ 7.1, as regards attorneys' fees and expenses; and

(b)     To pay taxes and Tax Expenses (as defined in ¶ 2.8(c)) on the income earned by

the Settlement Fund. Taxes and Tax Expenses shall be paid out of the Settlement Fund, shall be

considered to be a cost of administration of the Settlement, and shall be timely paid by the

Escrow Agent without prior order of the Court.

2.4     The Escrow Agent shall not disburse the Settlement Fund except as provided in

this Stipulation, by an order of the Court, or with the written agreement of Defendants' Counsel

and Lead Counsel.

2.5     Subject to further order and/or direction as may be made by the Court, the Escrow

Agent is authorized to execute such transactions on behalf of the Class as are consistent with the

terms of this Stipulation.

2.6     All funds held by the Escrow Agent shall be deemed and considered to be in

*custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such

time as such funds shall be distributed or returned to the parties who deposited such funds

pursuant to this Stipulation and/or further order(s) of the Court.

2.7     The Notice Administration Fund shall be used by the Escrow Agent to pay the

reasonable fees and expenses incurred by, and the reasonable fees charged by, the Claims

Administrator in connection with the administration and notice of the Settlement upon

presentation of customary invoices therefor, which invoices have been approved by Lead

Counsel, including, without limitation: the cost of identifying and locating members of the Class;

mailing Notice and Proof of Claim and publishing the Publication Notice (such amounts shall

include, without limitation, the actual costs of publication in national newswires, printing and

mailing the Notice, and reimbursement to nominee owners for forwarding notice to their

beneficial owners), soliciting Class claims, assisting with the filing of claims, administering and

distributing the Net Settlement Fund (as defined below) to Authorized Claimants, processing Proof of Claim forms, and paying escrow fees and costs, if any, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims ("Notice and Administration Costs").

Any residual monies held in the Notice Administration Fund upon the completion of notice administration for the Settlement shall be transferred to the Settlement Fund.

    e.  **Taxes**

2.8

(a)  The Parties and the Escrow Agent agree to treat the Notice Administration and Settlement Funds as "qualified settlement funds" within the meaning of Treasury Regulation §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 2.8, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)  The Claims Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Notice Administration and Settlement Funds (including without limitation the returns described in Treasury Regulation §1.468B-2(k)). Such returns (as well as the election described in ¶ 2.8(a)) shall be consistent with this ¶ 2.8 and in all events shall reflect that all taxes (including any estimated taxes, interest or penalties on the income earned) shall be paid out of the Settlement Fund.

(c)    All taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Notice Administration and Settlement Funds, and expenses and costs incurred in connection with the operation and implementation of this ¶ 2.8 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses or penalties relating to filing (or failing to file) the returns described in this ¶ 2.8) ("Tax Expenses"), shall be paid out of the Settlement Fund.

Defendants, Defendants' Counsel, Lead Plaintiff, and Lead Counsel shall have no liability or responsibility for the taxes or the Tax Expenses. Taxes and Tax Expenses shall be treated as, and considered to be a cost of administration of the Settlement and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court.

The Escrow Agent shall indemnify and hold each of the Defendants, Defendants' Counsel, Lead Plaintiff and Lead Counsel harmless for taxes and Tax Expenses (including, without limitation, taxes payable by reason of any such indemnification).

The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation §1.468B-2(l)(2)). Neither Defendants, Defendants' Counsel, Lead Plaintiff, nor Lead Counsel are responsible therefor, nor shall they have any liability with respect thereto.

The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 2.8. Defendants' Counsel agree to promptly provide the Escrow Agent with the statement described in Treasury Regulation §1.468B-3(e).

### f.   Termination of Settlement

2.9     The Defendants shall, acting collectively, have the right to terminate the Settlement and this Stipulation, by providing written notice of his or its election to do so to all other Parties within five (5) days of: (a) the Court's denial of Lead Plaintiff's motion for preliminary approval of the Settlement in any material respect without leave to amend and resubmit; (b) the Court's refusal to approve this Stipulation or any material part of it without leave to amend and resubmit; (c) the Court's declining to enter a Final Judgment in any material respect without leave to amend and resubmit; or (d) the date upon which the Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court. Any decision with respect to any Fee and Expense Application (as defined below in ¶ 7.0), or with respect to any Plan of Allocation, shall not be considered material to this Stipulation and shall not be grounds for termination. Lead Plaintiff shall have the right to terminate the Settlement and this Stipulation, by providing written notice of his or its or their election to do so to all other Parties within five (5) days of: (a) the Court's denial of Lead Plaintiff's motion for preliminary approval of the Settlement in any material respect as to the Defendants without leave to amend and resubmit; (b) the Court's refusal to approve this Stipulation or any material part of it without leave to amend and resubmit; (c) the Court's declining to enter a Final Judgment in any material respect as to the Defendants without leave to amend and resubmit; (d) the Defendants' failure to timely make full payment of the Settlement Amount into the Escrow Account; or (e) the date upon which the Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court. Any decision with respect to any Fee and Expense Application, Lead Plaintiff's Compensatory Award or with respect to any Plan of Allocation, shall not be considered material to this Stipulation and shall not be grounds for termination. In the event that

this Stipulation is terminated, the Settlement Amount including any interest accrued thereon, less expenses actually incurred or due and owing from the Settlement Fund for the Notice and Administration Costs of Settlement pursuant to ¶ 2.7 above, shall be refunded in accordance with ¶ 8.3.

2.10    If, prior to the Final Approval Hearing (as defined below in ¶ 4.1), any persons who otherwise would be members of the Class have timely filed for exclusion from the Class in accordance with the provisions of the Order of Preliminary Approval and the notice given pursuant thereto (*see* ¶ 4.9 below), and such persons in the aggregate purchased a number of shares of Common Stock during the Class Period in an amount greater than the sum specified in a separate "Supplemental Agreement" between the Parties, Defendants, in their sole discretion, shall have the option to terminate this Stipulation in accordance with the procedures set forth in the Supplemental Agreement.  The Supplemental Agreement shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein and in the Notice, to the extent necessary, or as otherwise provided in the Supplemental Agreement) unless and until a dispute among the Parties concerning its interpretation or application arises.  If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, Lead Plaintiff and the Defendants will undertake to have the Supplemental Agreement submitted to the Court *in camera.*  Copies of all requests for exclusion received and copies of all written revocations of requests for exclusion received shall be sent to counsel for the Parties promptly upon receipt by the Claims Administrator.

2.11    If (i) the Defendants exercise their right to terminate the Settlement as provided in this Stipulation; (ii) Lead Plaintiff exercises his right to terminate this Settlement as provided in

this Stipulation; (iii) the Court disapproves the Settlement; or (iv) the Effective Date as to the Settlement otherwise fails to occur, then:

(a)     The Settlement and the relevant portions of this Stipulation shall be null and void and shall have no further force or effect; and

(b)     The Parties shall revert to their respective positions in the Action as of July 2, 2015.

### D.     Class Certification

3.0     The Parties hereby stipulate to certification of the Class, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, solely for purposes of this Settlement. The certification of the Class shall be binding only with respect to the Settlement and only if the Judgment becomes Final.

### E.     Preliminary Approval Order

4.0     Promptly after execution of this Stipulation,  Lead Counsel and Defendants' Counsel shall jointly submit this Stipulation together with its Exhibits to the Court and shall request entry of an Order of Preliminary Approval (substantially in the form of Exhibit A) that will, *inter alia*, grant preliminary approval to the Settlement; certify the Class for settlement purposes only; and authorize notification of the Settlement Class substantially in the form of Exhibits B and C hereto, along with provision of a Proof of Claim substantially in the form of Exhibit D.

The Notice shall describe the Settlement; the proposed Plan of Allocation; the requests for awards of attorney fees and expenses and Lead Plaintiff's Compensatory Award (consistent with ¶¶ 7.0 and 7.5); the date of the Final Approval Hearing; Class Members' rights to opt out, object or otherwise be heard with regard to these matters; and Class Members' opportunity to file claims upon the Settlement Fund.

No later than five (5) Business Days following Preliminary Approval, EDMC shall provide to the Claims Administrator at its expense transfer records sufficient to identify Class Members.

The Stipulation of Settlement, Notice, Proof of Claim, and all papers submitted in support thereof shall be posted on a website to be maintained by the Claims Administrator.

### a.    The Final Hearing/Objections

4.1    Following provision of Notice to the Class Members, the Court shall hold a hearing (the "Final Approval Hearing") to consider whether to approve the Settlement; approve the Plan of Allocation; and award attorneys' fees and expenses and Lead Plaintiff a Compensatory Award.

4.2    Lead Counsel and Defendants shall submit papers in support of the foregoing matters no later than twenty-eight (28) days prior to the Final Approval Hearing.

4.3    Any Class Member who wishes to object to the fairness, reasonableness or adequacy of the matters set forth in ¶¶ 2.0–7.5 must effect service on both Lead Counsel and Defendants' Counsel and file with the Court no later than twenty-one (21) days before the Final Hearing, his, her or its objection in the manner set forth in ¶ 4.4 below; *provided however*, that a Class Member who submits a Request for Exclusion, as defined below, shall not be able to submit an objection.

4.4    The statement of objection shall state (i) whether the Person is a Class Member, (ii) which part of this Stipulation the Class Member objects to and (iii) the specific reason(s), if any, for each such objection made by the Class Member, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such objection. Such Class Member shall also provide documentation sufficient to establish the amount of publicly traded EDMC Common Stock purchased and sold

by such Class Member during the Class Period, and the prices and dates of each transaction. Failure to provide such information and documentation shall be grounds to void the objection.

4.5     Any Class Member who fails to comply with any of the provisions of ¶¶ 4.3 and 4.4 shall waive and forfeit any and all rights he, she or it may otherwise have to appear separately at the Final Approval Hearing and/or to object to this Stipulation, and shall be bound by all the terms of this Stipulation, and by all proceedings, orders and judgments in the Action.

4.6     Any objector shall be subject to the jurisdiction of the Court and may be deposed by Lead Counsel.

4.7     All papers in opposition to any objections, and in further support of the foregoing matters shall be filed by the Parties no later than seven (7) days before the Final Approval Hearing.

4.8     At the Final Approval Hearing, Parties shall request that the Court enter a Judgment substantially in the form attached to this Agreement as Exhibit E.

####      b.     Requests for Exclusion

4.9     Any Person falling within the definition of the Class may be excluded from the Class by submitting to the Claims Administrator a request for exclusion ("Request for Exclusion"), which complies with the requirements set forth in the Order of Preliminary Approval, Exhibit A hereto, and is postmarked no later than the Bar Date.  All Persons who submit valid and timely Requests for Exclusion shall have no rights under the Stipulation, shall not share in the distribution of the Net Settlement Fund, and shall not be bound by the Stipulation or the Judgment.  However, a Class Member may submit a written revocation of a Request for Exclusion up until five (5) days prior to the date of the Final Approval Hearing and receive

payments pursuant to this Stipulation and Settlement provided the Class Member also submits a valid Proof of Claim, as set forth in ¶ 6.3(i), below..

    **F.**    <u>**Releases**</u>

    5.0    The obligations incurred pursuant to this Stipulation shall effect a full and final disposition of the Action, any and all Released Plaintiff's Claims, and any and all Released Defendants' Claims, as against all Released Parties.

    5.1    Upon the Effective Date, Lead Plaintiff, on behalf of himself and Lead Plaintiff's Released Parties, and the Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Plaintiff's Claims against Defendants, and each of them, and any and all of Defendants' Released Parties, whether or not any individual Class Member executes and delivers the Proof of Claim.

    5.2    Upon the Effective Date, Defendants shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Defendants' Claims against Lead Plaintiff and any and all of Lead Plaintiff's Released Parties including, but not limited to, Lead Counsel.

    a.    <u>**Proof of Claims**</u>

    5.3    Only those Class Members filing valid and timely Proof of Claim forms shall be entitled to participate in the Settlement and receive a distribution from the Settlement Fund. The Proof of Claim to be executed by Class Members shall release all Released Plaintiff's Claims against the Released Parties, and shall be substantially in the form contained in Exhibit D attached hereto.

    Such Proof of Claims shall be postmarked within thirty (30) days after the date of the Final Approval Hearing, unless otherwise ordered by the Court.

All Class Members not submitting valid and timely requests for exclusion shall be bound by the releases set forth in Section F, whether or not they submit a valid and timely Proof of Claim.

### G.   Administration and Calculation of Claims, Final Awards, And Supervision and Distribution of the Settlement Fund

6.0   The Claims Administrator shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund (defined below) to Authorized Claimants. The distribution checks will be drawn upon the Settlement Fund.

6.1   Defendants shall have no responsibility or liability for the allocation of the Settlement Fund among the Class Members or the allocation of any awards of Lead Plaintiff's attorneys' fees, costs and expenses. Any such awards shall be paid solely by the Settlement Fund.

6.2   The Settlement Fund shall be applied as follows:

(i)   To pay the taxes and Tax Expenses described in ¶ 2.8 above;

(ii)   To pay all the costs and expenses reasonably and actually incurred in connection with settlement administration, including, but not limited to, locating members of the Class, providing Notice, soliciting Class claims, assisting with the filing of claims, processing Proof of Claim forms, making administrative determinations concerning the acceptance or rejection of submitted claims, administering and distributing the Settlement Fund to Authorized Claimants, paying escrow fees and costs, if any, and paying the reasonable fees and expenses of the Claims Administrator;

(iii)   To pay Lead Counsel's attorneys' fees, and expenses with interest thereon, as provided in ¶ 7.1 (the "Fee and Expense Award"), to the extent allowed by the Court;

(iv)   To pay the Compensatory Award to the Lead Plaintiff as provided in ¶ 7.5, to the extent allowed by the Court; and

(v)   Upon court approval, to distribute the balance of the Settlement Fund, that is, the total Settlement Fund less the items set forth in ¶¶ 6.2(i), (ii), (iii), and (iv) (the "Net Settlement Fund"), to the Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

6.3   Upon the entry of the Judgment and thereafter, subject to ¶ 2.3 and in accordance with the terms of the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants subject to and in accordance with the following:

(i)   Each Class Member claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit D hereto, signed under penalty of perjury and supported by such documents as specified in the Proof of Claim or such other documents or proof, as are reasonably available to the Authorized Claimant, as Lead Counsel, in their discretion, may deem acceptable, no later than thirty (30) days after the date of the Final Approval Hearing, or such other date ordered by the Court;

(ii)   Except as otherwise ordered by the Court, all Class Members who fail to timely submit a Proof of Claim within thirty (30) days after the date of the Final Approval Hearing, or such other period as may be ordered by the Court, or otherwise allowed, or who file a Proof of Claim that is rejected, shall be forever barred from receiving any payments pursuant to this Stipulation and Settlement, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment and will be barred

and enjoined from bringing any action against the Released Parties concerning the Settled Claims.

6.4    No Person shall have any claim against Lead Plaintiff, Lead Counsel, Defendants, Defendants' Counsel, the Claims Administrator, the Escrow Agent or any other agent designated by Lead Counsel based on distribution determinations or claim rejections made substantially in accordance with this Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court.

6.5    The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice and approved by the Court.  However, if there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), the Claims Administrator under the supervision of Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion. Thereafter, any balance that still remains in the Net Settlement Fund shall be donated to such not-for-profit as the Court may direct and approve.

This is not a claims-made settlement.  If all conditions of the Stipulation are satisfied and the Settlement becomes Final, no portion of the Settlement Fund will be returned to the Defendants or their insurance carriers.

Defendants and their corresponding Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of taxes or Tax Expenses, or any losses incurred in connection therewith.

6.6     It is understood and agreed by the Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation, and any order or proceedings relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set forth therein, or any other orders entered pursuant to this Stipulation.

### H.     Attorneys' Fees and Expenses

7.0     Lead Counsel may submit an application or applications (the "Fee and Expense Application") for payments to Lead Counsel from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) reimbursement of actual costs and expenses, including experts or consultants, incurred in connection with prosecuting the Action plus any interest on such attorneys' fees, costs and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court.  Lead Counsel reserves the right to make additional applications for fees and expenses incurred, if necessary.

7.1     Following approval of the Settlement, Lead Counsel shall be entitled to payment of 50% of the attorneys' fees and 100% of the expenses, including the fees and expenses of experts and consultants, awarded by the Court, as ordered, from the Settlement Fund, upon ten (10) days following the entry of the Court's order awarding such fees and expenses notwithstanding any appeal from an order approving the settlement.  The balance of the attorneys' fees shall be paid from the Settlement Fund upon entry of an order of distribution following completion of the claims administration process, as described in the Notice.

Lead Counsel agrees to refund to the Settlement Fund any award of attorneys' fees and

expenses by the Court paid to Lead Counsel in the event the Court's award of attorney's fees and expenses is reduced or reversed on appeal (the "Fee Award"). Payment of some or all of the Fee Award shall be made by Lead Counsel into the Settlement Fund within ten (10) days of a Final order by the Court of Appeals or the Supreme Court directing such reduction or reversal, and shall be distributed by the Escrow Agent to the Class pursuant to the manner directed in the Final order.

Lead Counsel further agrees to refund to the Settlement Fund any award of attorneys' fees and expenses by the Court paid to Lead Counsel in the event that this Settlement does not become Final; in such situation, payment of all of the Fee Award shall be made by Lead Counsel into the Settlement Fund within ten (10) days thereof, and shall thereafter be distributed by the Escrow Agent pursuant to the terms of ¶ 8.3.

7.2     The procedure for and allowance or disallowance by the Court of any application by Lead Counsel for attorneys' fees and expenses, including the fees and expenses of experts and consultants, to be paid out of the Settlement Fund, are not part of the Settlement set forth in this Stipulation and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation, and any order or proceedings relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to modify, terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Action.

7.3     Defendants and Defendants' Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment to Lead Counsel or any other Plaintiff's counsel and/or any other Person who receives payment from the Settlement Fund.

7.4     Defendants and Defendants' Released Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Lead Counsel and/or any other Person who may assert some claim thereto, of any Fee Award that the Court may make in the Action.

### a.     Lead Plaintiff's Compensatory Award

7.5     Lead Counsel may submit an application to the Court to authorize the payment of a compensatory award from the Settlement Fund for the time and expenses expended by Lead Plaintiff in assisting Lead Counsel in the litigation of this Action (the "Compensatory Award"). Subject to the payment terms in ¶ 2.0, payment for any Compensatory Award payable in cash shall be payable to Lead Plaintiff five (5) days after the Effective Date.

### I.     Effect of Disapproval, Cancellation or Termination

8.0     The Effective Date of the Stipulation shall be conditioned upon the occurrence of all of the following events:

(a)     Defendants have caused the contributions to be made to the Settlement Fund, as required by ¶ 2.0 above;

(b)     the Court has entered the Judgment, or a judgment substantially in the form of Exhibit E attached hereto; and

(c)     the Judgment has become Final, as defined in ¶ 1.18 hereof.

Any appeal or delay in (a) the approval of the Plan of Allocation, (b) the determination of any award of attorneys' fees and expenses, or (c) the granting of a Compensatory Award to Lead Plaintiff, shall not affect, alter, or delay the occurrence of the Effective Date.

8.1     Upon the occurrence of the Effective Date, any and all interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished,

except as set forth in this Stipulation.  The Settlement Fund shall be distributed in accordance with ¶ 6.2 hereof.

8.2     In the event that this Stipulation is not approved by the Court, or the Effective Date does not occur, then this Stipulation shall be canceled and terminated subject to ¶ 8.3 unless Lead Counsel and Defendants' Counsel mutually agree in writing to proceed with this Stipulation.  None of the Parties, or any of them, shall have any obligation whatsoever to proceed under any terms other than provided for and agreed herein.  Without limitation of any Party's other rights or remedies at law or in equity to enforce its rights against any other Party that breaches its obligations under this Stipulation, no breach by any Party of its obligations under this Stipulation shall permit any other Party to terminate this Stipulation or, after the Effective Date, affect or impair the disposition of the Action or release of claims contemplated by ¶ 5.1.

8.3     Unless otherwise ordered by the Court, in the event the Stipulation is terminated, or is canceled, or shall not become effective for any reason, within ten (10) Business Days after written notification of such event is sent by Defendants' Counsel or Lead Counsel to the Escrow Agent, subject to the terms of ¶ 2.9 hereof, the Settlement Amount (including accrued interest), less any expenses and any costs which have either been properly disbursed pursuant to ¶¶ 2.3-2.6 hereof, or are determined to be chargeable to the Settlement Fund or the notice and administration of the Settlement pursuant to ¶ 2.7 hereof, shall be refunded by the Escrow Agent to EDMC plus accrued interest attributable to that amount, by check or wire transfer pursuant to written instructions from Defendants.  At the request of the Defendants, the Escrow Agent or its designee shall apply for any tax refund owed to the Settlement Fund and pay the proceeds, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund, to the Defendants.

8.4     In the event the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Action immediately prior to July 2, 2015.  In such event, the terms and provisions of the Stipulation, with the exception of ¶¶ 1.0-1.40; ¶¶ 8.2-8.5 hereof, shall have no further force and effect and shall not be used in this Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses and interest awarded by the Court to Lead Counsel shall constitute grounds for cancellation or termination of the Stipulation.

8.5     If the Effective Date does not occur, neither Lead Plaintiff nor Lead Counsel shall have any obligation to repay any amounts actually and properly disbursed from the Notice Administration Fund.  In addition, any expenses already incurred and properly chargeable to the Notice Administration Fund pursuant to this Stipulation at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶ 8.3.

**J.     Miscellaneous Provisions**

9.0     This Stipulation, and all related documents, shall not be construed as or deemed to be evidence of (i) any presumption, an admission or concession on the part of any Defendant, or any of Defendants' Released Parties (as defined in ¶ 1.32(i)), with respect to any claim or any fact alleged by Lead Plaintiff or any member of the Class, the validity of any claim that was or could have been asserted by Lead Plaintiff or any member of the Class, or any deficiency of any defense that has been or could have been asserted by the Defendants in this Action or in any

other litigation, or (ii) any liability, negligence, fault, wrongdoing, or damage whatsoever and of any kind of any of the Defendants' Released Parties or in any way referred to for any other reason as against any of the Defendants' Released Parties, in any civil, criminal, or administrative action or proceeding. The Parties, and each of them, shall not assert or pursue any action, claim or rights that any party hereto violated any provision of Rule 11 of the Federal Rules of Civil Procedure. Further, the Parties, and each of them, will not deny in any statement made to any media representative that the Action is being settled voluntarily after consultation with competent counsel. The Parties, and each of them, and their respective counsel agree that the Action was resolved in good faith, following arm's length bargaining.

9.1     The Parties (a) acknowledge that it is their intent to consummate this agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Stipulation. Lead Counsel and Defendants' Counsel agree to cooperate with one another in seeking Court approval of the Order for Notice and Hearing, the Stipulation and the Settlement, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement.

9.2     The Parties intend this Stipulation to be a final and complete resolution of all disputes between them with respect to the Action as well as any disputes which could have been raised in the Action by Lead Plaintiff, the Class, and Lead Plaintiff's Released Parties, and each or any of them, against Defendants and Defendants' Released Parties, Defendants' Counsel, and each or any of them, on the one hand, and by Defendants against Lead Plaintiff, the Class, Lead Plaintiff's Released Parties, Lead Counsel, and each or any of them, on the other hand.

Accordingly, the Parties agree not to assert in any forum or, in any statement made to any media representative (whether or not for attribution) that the Action was brought by Lead Plaintiff or defended by any of the Defendants, or each or any of them, in bad faith or without a reasonable basis. The Judgment will contain a statement that during the course of the Action, the parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure. The Parties further agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

9.3     Except as otherwise provided herein, all agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

9.4     The Parties shall confer in good faith and agree on an appropriate set of documents to be produced to Lead Plaintiff as confirmatory discovery. All documents provided to Lead Plaintiff as part of such confirmatory discovery shall be deemed confidential, and Lead Plaintiff may only reference the review thereof as part of the assessment of the potential risk of proceeding with this Action and the fairness and reasonableness of the Settlement for the Class.

9.5     The MOU executed by Lead Counsel and Defendants' Counsel shall remain confidential after this Stipulation is filed with the Court.

Whether or not the Effective Date occurs or this Stipulation is terminated, neither this Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement:

(i)    may be deemed, or shall be used, offered or received against Defendants or Defendants' Released Parties, or each or any of them, as an admission, concession or evidence of the validity of any Released Plaintiff's Claims, the truth of any fact alleged by Plaintiff, the deficiency of any defense that has been or could have been asserted in the litigation, or of any alleged wrongdoing, liability, negligence, or fault of the Defendants and Defendants' Released Parties, or any of them; or

(ii)    may be deemed, or shall be used, offered or received against Lead Plaintiff, the Class, Lead Plaintiff's Released Parties, or each or any of them, as an admission, concession or evidence of the validity or invalidity of any of Released Defendants' Claims, the infirmity or strength of any claims raised in the Action, the truth or falsity of any fact alleged by Defendants, or the availability or lack of availability of meritorious defenses to the claims raised in the Action.

If this Stipulation is approved by the Court, any Party or any of the Released Parties may file this Stipulation and/or Judgment in any action that may be brought against such party or parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.6    The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

9.7    The waiver by one party of any breach of this Stipulation by any other party shall not be deemed as a waiver of any other prior or subsequent breaches of this Stipulation.

9.8    All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.9     This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

9.10    This Stipulation and the Exhibits attached hereto constitute the entire agreement among the parties hereto and no representations, warranties or inducements have been made to any party concerning this Stipulation or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Party shall bear its own costs.

9.11    Each counsel or other Person executing this Stipulation, any of its Exhibits, or any related settlement documents on behalf of any party hereto hereby warrants and represents that such Person has the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

9.12    This Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Stipulation all exchange original signed counterparts.

9.13    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties and the Released Parties.

9.14    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

9.15    This Stipulation and the Exhibits thereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the Commonwealth of Pennsylvania and the rights and obligations of the parties to this Stipulation shall be construed

and enforced in accordance with, and governed by, the internal, substantive laws of the Commonwealth of Pennsylvania without giving effect to that State's choice of law principles.

9.16    This Stipulation is deemed to have been prepared by counsel for all parties, as a result of arm's length negotiations among the parties. Whereas all parties have contributed substantially and materially to the preparation of this Stipulation, it shall not be construed more strictly against one party than another.

9.17    Whenever this Stipulation requires or contemplates that a Party shall or may give notice to the other, notice shall be provided by electronic mail, or next-day (excluding Saturday and Sunday) express delivery service as follows and shall be deemed effective upon such transmission or delivery to the address set forth below:

If to Lead Plaintiffs, then to:

Marc I. Gross
Michele S. Carino
**POMERANTZ LLP**
600 Third Avenue- 20th Floor
New York, NY 10016
migross@pomlaw.com
mcarino@pomlaw.com

If to Defendants, then to:

Perry A. Napolitano
Justin J. Kontul
**REED SMITH LLP**
225 Fifth Avenue
Pittsburgh, PA 15222
pnapolitano@reedsmith.com
jkontul@reedsmith.com

9.18    All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Stipulation or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.

9.19    The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, dated September 16, 2015.

Dated: September 16, 2015

**POMERANTZ LLP**

/s/

Marc I. Gross
Michele S. Carino
600 Third Ave., 20th Floor
New York, NY 10016
*Attorneys for Lead Plaintiff*

**REED SMITH LLP**

/s/

Daniel I. Booker
Perry A. Napolitano
Justin J. Kontul
225 Fifth Avenue
Pittsburgh, PA 1522

George T. Conway III
Bradley R. Wilson
**WACHTELL, LIPTON,
ROSEN & KATZ**
51 West 52nd Street
New York, NY 10019

*Attorneys for Defendants*